UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOPE K. KANTETE,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civ. No. 16-4801 (RBK)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

    Petitioner, Hope Kantete, is a federal prisoner currently incarcerated at FMC Carswell in Fort Worth, Texas. She is proceeding through counsel with a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's motion will be denied and a certificate of appealability shall not issue.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    On direct appeal, the Court of Appeals for the Third Circuit succinctly described the underlying circumstances as follows:

> Kantete owned and operated Safari Auto Sales, a car dealership in Jersey City, New Jersey, but did not limit her stake in the automotive trade to legitimate business. Instead, Kantete worked with several sources to obtain stolen vehicles—typically high-end luxury vehicles, such as Range Rovers, Mercedes–Benzes, BMWs, and Porsches—and employed other individuals to change the Vehicle–Identification Numbers ("VINs") and obtain counterfeit Certificates of Title. She also located customers for those vehicles, including many in Africa.
>
> Kantete was ultimately convicted of one count of conspiracy to transport stolen motor vehicles and ten counts of transportation of stolen motor vehicles, in violation of 18 U.S.C. §§ 371 and 2312. At sentencing, the District Court determined that Kantete was responsible for a loss amount between $2.5 million and $7 million, resulting in an eighteen-level Guidelines enhancement. The District

> Court also found applicable a number of other enhancements that resulted in a Guidelines range of 262 to 327 months' imprisonment. After considering the parties' arguments, the District Judge sentenced Kantete to the bottom of that range, ordering her to serve 262 months' imprisonment and concurrent three-year terms of supervised release and to pay restitution in the amount of $346,936.91.

*United States v. Kantete*, 610 F. App'x 173, 175 (3d Cir. 2015).

Petitioner appealed to the Third Circuit. *See id.* On May 7, 2015, the Third Circuit denied her appeal and affirmed the sentence imposed by the District Court. *See id.* at 178-79. Petitioner then filed the instant § 2255 motion in August 2016. (*See* ECF No. 1.) In November 2016, Respondents submitted their Answer. (*See* ECF No. 4). Petitioner filed a traverse thereafter. (*See* ECF No. 5).

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a motion to vacate, set aside or correct a sentence of a person in federal custody entitles a prisoner to relief if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). When considering a § 2255 motion, a district court "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (quoting *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)). Additionally, a district court must hold an evidentiary hearing on the motion if "'the files and records do not show conclusively that [the movant] was not entitled to relief.'" *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (alteration in original) (quoting *Solis v. United States*, 252 F.3d 289, 294 (3d Cir. 2001)).

2

## III. DISCUSSION

Petitioner raises two ineffective assistance of counsel claims in her § 2255 action. First, Petitioner asserts that her trial counsel was ineffective for advising her "to proceed to trial rather than to seek a plea deal, or, at a minimum plead guilty 'open.'" (*See id.* at 5.) Second, Petitioner argues that her trial counsel was ineffective for failing to "properly preserve [her] objection to the 'serious bodily injury' upward adjustment." (*See* ECF No. 1 at 4.)

An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland*, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986); *Strickland*, 466 U.S. at 689; *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The second prong of the *Strickland* test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Collins v. Sec. of Pennsylvania Dept. of Corr.*, 742 F.3d 528, 547 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [. . .] that course should be followed." *Id.*

### A. Guilty Plea

Petitioner's first ineffective assistance of counsel claim arises out of the plea process itself. Petitioner argues that her trial counsel was ineffective for allegedly advising her "to proceed to trial rather than seek a plea deal or, at minimum plead guilty 'open.'" (*See* ECF No. 1 at 5.) To demonstrate ineffective assistance of counsel in the context of a rejected plea offer, a defendant must show that:

> but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court (*i.e.* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); that the court would have accepted its terms; and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence ultimately imposed.

*Lafler,* 132 S. Ct. at 1385.

The Third Circuit has recognized that "counsel must provide defendants facing a potential guilty plea 'enough information to make a reasonably informed decision whether to accept a plea offer.'" *United States v. Vaughn*, 704 F. App'x 207, 212 (3d Cir. 2017) (quoting *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015)). Significantly, "[k]nowledge of the comparative sentence

4

exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). But the Third Circuit has also cautioned that courts should be "wary" of claims that trial counsel did not adequately advise a defendant about the benefits and consequences of a plea offer because "defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails." *Id.* at 46 n.9.

Here, Petitioner contends that:

> [H]er attorney performed in an objectively unreasonable manner by advising Kantete to proceed to trial rather than to plead guilty. By negotiating a plea agreement and pleading guilty there was certainly a reasonable probability Kantete would have obtained some concessions from the Government as inducement for the guilty plea, as is usually the case. But if not, Kantete would certainly have received a three point "acceptance of responsibility" reduction.

(ECF No. 1-1 at 9.)

However, contrary to Petitioner's assertion that counsel should have negotiated a plea offer on her behalf, Petitioner did, in fact, receive two plea agreement offers from the Government. (*See* ECF No. 4 at 5-7.) Petitioner was initially offered the opportunity to plead guilty after the first indictment was brought against her, but she ultimately rejected that offer. (*See id.* at 5.) Petitioner was then again offered the opportunity to plead guilty after the third superseding indictment was handed down. (*See id.* at 6.) At arraignment on that indictment, the Government detailed on the record the charges contained in the indictment, as well as Petitioner's sentencing exposure if convicted of each of those offenses. (*See* ECF No. 4-1 at 3-5.)

> THE COURT: Mr. Almonte, can you tell us what the penalty -- can you the defendant what the penalties are if convicted on these, all these counts?
>
> [GOVERNMENT]: Certainly, Your Honor. The government has sought a third Superseding Indictment for purposes of streamlining

5

the trial. This Superseding Indictment has eleven counts. Count one charges Mrs. Kantete with conspiracy to transport stolen motor vehicles in interstate and foreign commerce contrary to Title 18, United States Code, Section 2312 in violation of Title 18, United States Code Section 371.

The remaining counts are all in violation of Title 18, United States Code, Section 2312 and Section 2 as well.

Count [two] charges her with transporting in interstate and foreign commerce a stolen 2009 Mercedes Benz GL550.

Count three charges her with doing the same with respect to a stolen 2008 Mercedes Benz S550.

Count four charges her with the same transporting a stolen 2008 Mercedes Benz ML350.

Count five concerns a stolen 2010 Honda CRV.

Count six concerns a stolen 2011 Honda Pilot.

Count seven concerns a stolen 2011 Accura [sic] CSX.

Count eight concerns a stolen 2011 Land Rover, Range Rover.

Count nine concerns a stolen 2011 Mercedes Benz E350.

Count ten charges a stolen 2011 Mercedes Benz C300 and Count [eleven] concerns a second 2011 Land Rover Range Rover.

When convicted of these charges the defendant will face the following maximum terms of imprisonment. Count one, up to five years imprisonment. As to Counts two through [eleven], up to ten years imprisonment for each Count. And in addition, the court may impose a fine equal to the greatest of $250,000 or two times the pecuniary gain to the defendant or the loss to any victim.

Among other things the court may impose a term of supervised release of up to three years per count and should she violate the terms of supervised release, she may be sentenced up to two additional years of imprisonment per count. And finally, Your Honor, if [] the defendant is not a citizen of the United States, a conviction of the charged offenses will likely result in the defendant being subject to immigration proceedings and removed from the United States. If the defendant is a citizen of another county, she

has a right to contact the Consulate of that county concerning these charges.

THE COURT: Am I also correct that she is -- would be subject to mandatory restitution?

[GOVERNMENT]: That is correct, Your Honor.

(*Id.*)

Following this recitation, Petitioner was questioned by the Court pursuant to *Missouri v. Frye,* 566 U.S. 134 (2012), about whether she was aware of the plea offer from the Government and whether she was aware of the terms of that offer. (*See id.* at 9.) Petitioner stated that she was aware of the terms of the plea offer but that she had chosen to reject it. (*See id.*) The transcript of that court proceeding reveals the following:

> THE COURT: All right. Mr. Neary, have you explained these penalties to your client if she is convicted?
>
> [DEFENSE COUNSEL]: Judge, with regards to, of course, this is the fourth indictment that we now have the advantage of looking at. I've explained to [Petitioner] or reviewed with her each count of the indictment, including this present third superseding indictment and *we've gone over the potential penalties and consequences if one were to go to trial without the benefit of a plea bargain*, the sentencing would then be controlled by the Sentencing Guidelines modified possibly by 3553(a) and would be up to the Court's discretion and would not be limited by any agreement that we – me on behalf of Miss Kantete with the government would happen. She understands those consequences.
>
> [. . .]
>
> THE COURT: Now, there's a couple other things still out there. Number one, Mr. Neary, I'm sure you saw the letter if April 25th that [the Government] sent me asking me to inquire of you and your client about whether or not you and your client are aware of the proposed plea dated April 9, 2013.
>
> [DEFENSE COUNSEL]: I did see the letter.
>
> [. . .]

7

>THE COURT: The question is simply whether or not [Petitioner's] aware of this April 9th, 2013 plea agreement proposal.
>
>[DEFENSE COUNSEL]: The answer simply is yes. I provided a copy to her. I've read it with her. Reviewed it with her.
>
>THE COURT: All right.
>
>[GOVERNMENT]: And, Your Honor, the only question and the only thing that the Government is seeking to know is whether or not she has rejected it so that we can act accordingly. [. . .] All we're asking here is whether she has rejected that and I think we have a right to know that because we've extended Mr. Neary and Miss Kantete the courtesy of a plea agreement *at their request*.
>
>[. . .]
>
>THE COURT: Miss Kantete, there is a plea agreement letter from the U.S. Attorney's Office to your lawyer dated April 9, 2013. *Were you aware of the terms of that plea agreement?*
>
>THE DEFENDANT: *Yes.*
>
>THE COURT: *And do you reject or accept that plea agreement.*
>
>THE DEFENDANT: *I reject it.*

(ECF No. 4-1 at 5-9 (emphasis added).)

The record demonstrates that Petitioner was acutely aware of both her sentencing exposure if convicted at trial, and the sentence offered in the Government's proposed plea agreement. The record also establishes that trial counsel discussed with Petitioner the potential penalties and consequences if she were to proceed to trial rather than to accept a plea offer. These facts undermine Petitioner's current assertion that she would have accepted a guilty plea if her counsel had been effective. *See Lafler,* 132 S. Ct. at 1389 ("[A] court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions."); *see also Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains

his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyers.") Petitioner was twice offered the benefit of such a plea agreement and she twice rejected those offers, even after having been informed of her sentence exposure if she proceeded to trial.

Given the foregoing, Petitioner has failed to demonstrate that her counsel was ineffective for not negotiating a plea agreement for her, when Petitioner indeed received two plea agreement offers. And, Petitioner has failed to demonstrate that she would have accepted a guilty plea. *See Lafler*, 566 U.S. at 164. Accordingly, Petitioner has not satisfied the *Strickland* two-prong test for ineffective assistance of counsel and she is, therefore, not entitled to relief on this claim.

### B. Guidelines Enhancement

Petitioner also argues that her counsel was ineffective for "failing to properly preserve Kantete's objection to the 'serious bodily injury' upward adjustment." (*See* ECF No. 1 at 4.) It is unclear exactly whether Petitioner is alleging that counsel failed to object to the "serious bodily injury" enhancement at sentencing, or whether Petitioner is alleging that her counsel was ineffective for failing to raise the issue on appeal.[1] Regardless, both claims are without merit as they cannot survive *Strickland*'s two-prong test.

Prior to sentencing, defense counsel sent the District Court a letter dated March 7, 2014, wherein counsel listed his objections to various offense level calculations from the Pre-Sentence Report ("PSR"). (*See* ECF No. 4-2 at 5.) One of defense counsel's objections was the application of a two-level sentence enhancement pursuant to U.S.S.G. § 2B1.1(b)(15), which provides, in relevant part:

---

[1] This Court notes that Petitioner was represented by the same attorney both at trial and on direct appeal. (*See* ECF No. 4-2 at 2); *see also Kantete*, 610 F. App'x at 174.

> If the offense involved (A) the conscious or reckless risk of death or serious bodily injury; or (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels.

U.S. Sentencing Guidelines Manual § 2B1.1(b)(15) (U.S. Sentencing Comm'n 2013).

At sentencing, defense counsel and the Government presented oral argument as to whether or not § 2B1.1(b)(15) should apply. (*See* ECF No. 4-2 at 69-72, 78-70.) The Court ultimately decided to impose the two-level sentencing enhancement, reasoning:

> One [enhancement] that's hotly contested is Paragraph 168, which is offense character under 2B1.1(b)(15), that is the conscious or reckless risk of death or serious bodily injury. I don't agree with the government's position on part of this. I don't think that the offense involved a firearm. I think the guidelines are speaking of the offenses that have been charged and proven in the case. None of the offenses charged and proven in the case involved a firearm. Nevertheless, as noted by the government, there is an alternative ground to rely on, and that is the conscious disregard or the serious risk -- or the reckless, excuse me, risk of death or seriously bodily injury. I don't think there is evidence of a conscious disregard, but there is certainly plenty of evidence of a reckless risk of death or serious bodily injury both in the one carjacking for which we have evidence and which is, in fact, tied to this defendant, and I think also the conversation she had with Thugger in which she heard that there was a chase by the police through the neighborhoods and damage to the car shows a reckless risk of serious bodily injury. People can be very seriously hurt. And we've all seen those tragic cases in which a car chase leads to the death of innocent people. So I think that is justified.

(*Id.* at 85.)

On direct appeal to the Third Circuit, Petitioner argued that this Court erred when it imposed the two-level enhancement under § 2B1.1(b)(15), asserting that it placed "undue emphasis" on two specific carjackings "when the bulk of the other thefts did not involve such a risk." *See Kantete*, 610 F. App'x at 176. Petitioner further contended that "the Government could not even confirm that Kantete was specifically involved with [those] carjacking[s]." *See id.*

(internal quotation marks and citation omitted). The Third Circuit denied Petitioner's assertion, holding that "§ 2B1.1(b)(15) requires only that the offense 'involved' a reckless risk of serious bodily injury, not that every instance of conduct in the course of the offense have done so." *See id.*

Moreover, as to Petitioner's contention that the Government could not confirm that Petitioner was involved with the carjacking, the Third Circuit found that under § 1B1.3(a)(1)(B)[2], which governs relevant offense conduct, Petitioner "need not have been present during the carjacking for it to be considered part of the relevant offense conduct." *See id.* The Third Circuit further explained, in pertinent part:

> [Petitioner] is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," and there is substantial evidence in the record to fulfill

---

[2] Section 1B1.3 of the United States Sentencing Guidelines ("U.S.S.G.") states, in pertinent part:

> (a) <u>Chapters Two (Offense Conduct) and Three (Adjustments).</u> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S. Sentencing Guidelines Manual § 1B1.3 (U.S. Sentencing Comm'n 2013).

> each of § 1B1.3(a)(1)(B)'s requirements. *See* U.S.S.G. § 1B1.3(a)(1)(B). As explained in the Presentence Investigation Report ("PSR"), because Kantete "order[ed] high-end vehicles, many of which can only be operated through a 'smart key,'" it was "reasonably foreseeable that one of the ways thieves got vehicles with smart keys was through carjacking." (PSR ¶ 135.) Moreover, Kantete does not contend that the District Court failed to make sufficient findings as to the elements of § 1B1.3, and any such objection is therefore waived. *See United States v. Hofecker*, 530 F.3d 137, 162 (3d Cir. 2008) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (internal quotation marks omitted)).

*Id.* at 176-77.

Accordingly, the Third Circuit found that the Government did not need to confirm that Petitioner was specifically involved in the carjacking to find that she had been part of the relevant conduct. *See id.*

In this § 2255 action, Petitioner emphasizes the Third Circuit's statement that since Petitioner did "not contend that the District Court failed to make sufficient findings as to the elements of § 1B1.3," that "any such objection is therefore waived." (*See* ECF No. 1-1 at 4-8.) Petitioner asserts that if trial counsel had "required the District Court to make factual findings as to the elements of U.S.S.G. § 1B1.3," there is a reasonable probability that the Third Circuit's ruling on whether § 2B1.1(b)(15) applied would have been different. (*See* ECF No. 1-1 at 7.) Petitioner contends that the Third Circuit even stated as much: "[t]he implication here, is that *if* counsel had requested the District Court construe the elements of § 1B1.3," there was "more than a reasonable probability the court would have found the indicated carjacking was not reasonably foreseeable to Kantete based merely upon the fact that Kantete had requested 'high-end' vehicles to export. The ensuing construction of U.S.S.G. § 1B1.3 'relevant conduct' would have militated against such a finding." (*See id.* (emphasis in original).)

12

This Court does not agree with Petitioner. Even though appellate counsel did not argue that this Court failed to make sufficient findings at to § 1B1.3, appellate counsel was not ineffective by failing to raise this issue. Generally, appellate counsel has no obligation to raise every claim on direct appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). The decision of which issues to raise on appeal is a strategic choice, and counsel is not required to bring every possible issue. *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). The chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success. *See Jones*, 463 U.S. at 753. Thus, appellate counsel here was not obligated to raise Petitioner's claim.

Even if appellate counsel had raised the issue of the findings as to § 1B1.3, the Third Circuit still found that this argument was without merit. *See Kantete*, 610 F. App'x at 176. The Third Circuit expressly found that Petitioner was responsible under § 1B1.3(a)(1)(B) for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," and that there was "substantial evidence in the record to fulfill each of § 1B1.3(a)(1)(B)'s requirements." *See id.* Far from implying that if trial counsel had requested this Court make specific findings as to § 1B1.3(a)(1)(B) that the outcome would have been different, the Third Circuit evaluated the requirements of § 1B1.3(a)(1)(B) and found that Petitioner did, in fact, satisfy each one. *See id.* The Third Circuit clearly pointed out that when Petitioner "ordered" high-end vehicles, it was "reasonably foreseeable" that some vehicles could have been taken via carjacking. *See id.* Given that the Third Circuit addressed Petitioner's claim and found it was without merit, Petitioner cannot demonstrate that she was prejudiced by appellate counsel's failure to raise the claim on appeal. Likewise, Petitioner cannot demonstrate that if counsel had requested this Court make specific findings as to § 1B1.3(a)(1)(B), that the result of her appeal would have been

different. Accordingly, Petitioner is unable to establish the *Strickland* two-prong test for ineffective assistance of counsel. She is not entitled to relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insomuch as Petitioner's claims are without merit, Petitioner's habeas petition is inadequate to proceed further and therefore, a certificate of appealability shall not issue.

## V. CONCLUSION

For the reasons stated above, the Petitioner's § 2255 motion is **DENIED** and a certificate of appealability shall not issue.

DATED: <u>April 1, 2019</u>　　　　　　　　　　　　　　　　s/Robert B. Kugler
　　　　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge